# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **JUSTIN THOMAS VOIGT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-24-453-GLJ** |
| | ) | |
| **FRANK BISIGNANO,[1]** | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Claimant Justin Thomas Voigt requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g).  He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled.  For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he

---

[1] On May 7, 2025, Frank Bisignano became the Commissioner of Social Security.  In accordance with Fed. R. Civ. P. 25(d), Mr. Bisignano is substituted for Martin O'Malley as the Defendant in this action.

is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether the correct legal standards were applied. *See Hawkins v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Instead, the Court must review the record as a whole, and "[t]he

---

[2] Step one requires Claimant to establish that he is not engaged in substantial gainful activity. Step two requires Claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If Claimant *is* engaged in substantial gainful activity, or his impairments *are not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If Claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where Claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show that there is significant work in the national economy that Claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if Claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-751 (10th Cir. 1988).

substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-801.

## Claimant's Background

Claimant was forty-five years old at the time of the administrative hearing. (Tr. 39, 325). He completed his GED in 1995 and has worked as a sales associate, tractor mechanic, and pastor. (Tr. 29, 369). Claimant alleges an inability to work since May 1, 2020, due to moderate to severe back pain; arthritis in cervical, lumbar, and thoracic spine; multiple bulging discs; degenerative disc disease ranging from mild to severe; lumbar facet arthrosis; mild to severe right/left neural foraminal narrowing of the lumbar spine; moderate thoracic pain awaiting MRI results; and sciatica. (Tr. 368).

## Procedural History

On August 30, 2020, Claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. His application was denied initially and upon reconsideration. Administrative Law Judge ("ALJ") Christopher Hunt conducted an administrative hearing and determined that Claimant was not disabled in a written decision dated June 14, 2022. (Tr. 129-139). The Appeals Council remanded the case with instructions for the ALJ to explain inconsistencies between the assessed residual functional capacity ("RFC") and the opinion from consultative examiner Dr. Krishnamurthi. (Tr. 148-149). On remand, ALJ Christopher Hunt held a second administrative hearing and again determined Claimant was not disabled in a written decision dated November 6, 2023. (Tr. 17-32). The Appeals Council then denied review, so ALJ Hunt's November 2023

opinion represents the Commissioner's final decision for the purpose of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made his decision at steps four and five of the sequential evaluation. At step two, he determined that Claimant had the severe impairments of lumbar spine degenerative disc disease, lumbar spondylosis with radiculopathy, osteoarthritis of the cervical spine, chronic pain syndrome, and obesity, as well as the medically determinable impairments of hypertension, gastroesophageal reflux disease, obesity, and benign prostate hyperplasia. (Tr. 19-20). At step three, he determined Claimant did not meet any Listing. (Tr. 20). At step four he found Claimant had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), *i.e.*, he could lift twenty pounds occasionally and ten pounds frequently, sit six hours in an eight-hour workday, and stand/walk three hours in an eight-hour workday, but that standing and walking must be done in one-hour increments. Additionally, he found Claimant could frequently use his lower extremities for operation of pedals or foot controls, handle, grasp, and perform fine motor manipulation; occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; but that he could never climb ladders/ropes/scaffolds, work at unprotected heights, or work around open bodies of water, dangerous machinery, or sharp objects. Finally, he found Claimant could not reach or work overhead, but that he had no limitation in any other direction. (Tr. 21). The ALJ then concluded that Claimant was not disabled because he could return to his past relevant work as sales associate or pastor. Alternatively, the ALJ found Claimant was not

disabled because he could perform other work in the economy, *i.e.*, routing clerk, pricer, or garment folder.  (Tr. 29-31).

## Review

Claimant contends the ALJ erred by:  (i) failing to find Claimant had the medically determinable impairment of depression, which affected the RFC, and (ii) failing to adequately account for Claimant's objection to Dr. Krishnamurthi's consultative opinion. Upon review, the Court finds neither contention persuasive for the following reasons.

The relevant medical evidence in the record as to depression, as pointed out by Claimant, pre-dates the alleged onset date, with the exception of one record.  (Tr. 487-488, 490, 494, 496, 503, 509, 576).  Contrary to Claimant's assertion, none of these records indicate Claimant was diagnosed with even mild depression.  Instead, these citations reference PHQ-9 scores.  "The PHQ-9 'is one of the most validated tools in mental health and can be a powerful tool to assist clinicians with diagnosing depression and monitoring treatment response.  The nine items of the PHQ-9 are based directly on the nine diagnostic criteria for major depressive disorder in the DSM-IV.'  The PHQ-9 may be used 'as a screening tool, an aid in diagnosis, and as a symptom tracking tool that can help track a patient's overall depression severity as well as track the improvement of specific symptoms with treatment.'"  *Sullins v. Saul*, 2021 WL 2169117, at *5 n.4 (W.D. Okla. May 27, 2021) (quoting AIMS CENTER, *Advancing Integrated Mental Health Solutions, PHQ-9 Depression Scale*, (available at https://aims.uw.edu/resource-library/phq-9-depression-scale (updated April 9, 2024)).

Claimant's PHQ-9 scores ranged from 3 to 7, with 7 being scored in 2018, and the score being lower thereafter. (Tr. 487-488, 490, 494, 496, 503, 509, 576). A PHQ-9 score of 0-4 indicates a level of depression severity of "Minimal" while a score of 5-9 indicates a level of depression severity of "Mild." *See* Kurt Kroenke, M.D., et al., *The PHQ-9: Validity of a Brief Depression Severity Measure, J. Gen. Intern. Med.* 16, 606-613, Table 2 (2001), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1495268/ (last visited Dec. 30, 2025); *see also Sullins*, 2021 WL 2169117, at *5 n.5. Notations contemporaneous to these PHQ-9 scores further reflect text notations either that there was no sign of anxiety of depression, or that Claimant denied severe depression, and, again, contained no diagnosis of depression. (Tr. 488, 491, 494, 497, 508, 575). The relevant PHQ-9 score after Claimant's alleged onset date is 5, but the related treatment note contains no discussion or diagnosis of depression. (Tr. 551-554). Indeed, a February 2023 treatment note specifically states, "No depression or anxiety." (Tr. 682). Claimant further notes that he was prescribed citalopram, which is used for treatment of depression. *See* National Library of Medicine, Citalopram, https://medlineplus.gov/druginfo/meds/a699001.html (last visited Dec. 30, 2025). However, Claimant's medication reports list no associated diagnosis with this medication prescription. (Tr., *e.g.*, 555).

As to his physical RFC assessment, on April 22, 2022, Dr. Subramaniam Krishnamurthi, M.D., conducted a comprehensive internal medical evaluation of Claimant, noting Claimant reported back pain. (Tr. 647). The written portion of the report reflects Dr. Krishnamurthi found Claimant's range of motion largely within normal limits, except

6

that he noted flexion, extension, and lateral flexion of the dorsolumbar spine are slightly reduced due to pain.  (Tr. 648).  He reiterated these findings in his "Final Impression," stating that Claimant could walk without an assistive device, but that it was a slightly antalgic gait due to pain with a slow, stable gait, and that "Range of motion of cervical spine is within normal limits.  Range of motion of *lumbar spines are reduced due to pain*. Range of motion of both upper extremities is within normal limits.  Range of motion of both lower extremities is within normal limits."  (Tr. 649).  Dr. Krishnamurthi also completed a "Medical Source Statement" ("MSS") regarding Plaintiff's RFC, in which he indicated, *inter alia*, that Claimant could sit for six hours in a workday, up to three hours at a time, and that he could stand/walk three hours in a workday, up to one hour at a time. (Tr. 651).  Accompanying the MSS is a "Range of Motion Report Form," containing over fifty range of motion measurements each for Claimant's left and right sides.  (Tr. 657-659). Dr. Krishnamurthi completed each of these measurements, except for seven measurements related to flexion of the cervical and *lumbar spines as to Claimant's left side*.  Those seven boxes were left blank.  (Tr. 657).  He further noted Claimant's straight leg raise test was negative bilaterally, and again noted the antalgic gait due to pain, but that it was stable with a slow pace, and that heel/toe walking was difficult but that Claimant did not need an assistive device.  (Tr. 659).

State reviewing physicians found initially and on reconsideration that there was no evidence of a mental medically determinable impairment.  (Tr. 100, 117-118).  As to his physical impairments, state reviewing physicians determined initially and on

reconsideration (but prior to Dr. Krishnamurthi's examination), that Claimant could perform light work but that he could only occasionally stoop. (Tr. 102-105, 120-122).

In his written opinion at step two, the ALJ makes no mention of depression or the PHQ-9 scores in the record but recognized the severe impairments of lumbar spine degenerative disc disease, lumbar spondylosis with radiculopathy, osteoarthritis of the cervical spine, chronic pain syndrome, and obesity. (Tr. 19-20). At step four, the ALJ thoroughly summarizes Claimant's hearing testimony as well the medical evidence in the record, including evidence both prior to the alleged onset date in May 2020 and after. (Tr. 22-28). Specifically, the ALJ summarizes, *inter alia*, the objective test findings beginning in 2019 and consisting of MRIs and nerve conduction studies, and noting the record reflects Claimant had full range of motion in all extremities in 2020 and 2021. (Tr. 23-24). The ALJ summarizes Dr. Krishnamurthi's exam findings, including the slightly reduced range of motion in the dorsolumbar spine. (Tr 24-25). The ALJ notes a 2021 report (after the alleged May 2020 onset date) that Claimant reported improvement with pain medication that allowed him to continue working and do things around his home. (Tr. 25). The ALJ notes a decreased range of motion of the neck in February 2023, but a full range of motion in all extremities in April 2023. (Tr. 25). The ALJ notes a decreased range of motion of the right shoulder in June 2023, but a full range of motion in all extremities in August 2023. (Tr. 26). The ALJ then notes Dr. Krishnamurthi's MSS findings, and found his opinion to be generally persuasive. The ALJ notes that the opinion was formulated after an in-person exam, and was consistent with other exam findings in the record. The ALJ found Dr. Krishnamurthi's findings that Claimant could walk three hours and stand three hours for a

total of six hours to be unpersuasive as there was no clear explanation for the limitation, but agreed that the limitation to one hour at a time for each made sense. He further found the postural limitations supported by the lumbar spine disorder and record and treatment, but further limited Claimant to no overhead reaching (in contrast to Dr. Krishnamurthi) based on Claimant's cervical spine and upper extremity complaints. (Tr. 27). Noting Claimant's objection to Dr. Krishnamurthi's opinion as cursory and rushed, evidenced by the missing cervical and lumbar spine range of motion recordings, the ALJ notes he denied an objection at the hearing because such evidence went to weight and persuasiveness rather than admissibility. (Tr. 28). The ALJ thus found Claimant could return to his past relevant work at light exertions, or alternatively other work in the economy, and that he was therefore not disabled. (Tr. 29-32).

An RFC has been defined as "what an individual can still do despite his or her limitations." Soc. Sec. R. 98-6p, 1996 WL 374184, at *2 (July 2, 1996). It is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Id.* This includes a discussion of the "nature and extent of" a claimant's physical limitations including "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching)." 20 C.F.R. §§ 404.1545(b), 416.945(b). Further, this assessment requires the ALJ to make findings on "an individual's ability to do sustained work-related physical and mental activities in a work setting on a

9

regular and continuing basis[,]" and to "describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." Soc. Sec. R. 98-6p, 1996 WL 374184, at *1, 7. Here, the ALJ has fulfilled his duty. Claimant nevertheless asserts that the ALJ wholly failed to account for his depression and further erred in denying his objection to Dr. Krishnamurthi's exam findings. (Tr. 42).

If a claimant has any severe impairment at step two, the ALJ is required at step four to consider all his impairments, severe and nonsevere, in assessing his RFC. *See id.* ("In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p because [s]he has not linked h[er] RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013), (citing *Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003)).

PHQ-9 Scores and Depression. Claimant first contends the ALJ should have found he had depression as a medically determinable impairment, noting his PHQ-9 score of 3 in June 2019 (Tr. 487), as well as summaries of Claimant's diagnoses contained in the record, reflecting a diagnosis of stress, not elsewhere classified (Tr. 723, 732). However, the

record supports the ALJ's findings. There is no evidence Claimant was diagnosed with depression, reported depression, or exhibited signs of depression after the alleged onset date, and a prescription alone is not objective medical evidence. *See Rabon v. Astrue*, 464 Fed. Appx. 732, 734 (10th Cir. 2012) ("The ALJ did not find an impairment based on depression, and the record supports that determination."). Claimant's PHQ-9 scores were all minimal or mild and themselves self-reports of subjective symptoms. *Jackson v. Kijakazi*, 2021 WL 6414658, at *4 (W.D. Okla. Nov. 23, 2021), *report and recommendation adopted*, 2022 WL 99994 (W.D. Okla. Jan. 10, 2022) ("[T]he [PHQ-9] scores are not sufficient by themselves to determine disability or non-disability. Substantial evidence supports the ALJ's RFC assessment as to mental limitations."). Accordingly, the Court finds substantial evidence supports the ALJ's assessment as to the lack of mental limitations for Claimant.

<u>Consultative Opinion Evaluation</u>. As to Dr. Krishnamurthi's consultative opinion, the ALJ provided the requisite narrative discussion of his opinion. Furthermore, the ALJ explained in detail, as noted above, points where the evidence did not support further restrictions and points where the evidence supported further restrictions than prescribed by Dr. Krishnamurthi. This is consistent with his prerogative to adopt a middle ground among medical opinions that does not fully embrace any one so long as the ALJ makes clear the evidence upon which he relies. *Smith v. Colvin*, 821 F.3d 1264, 1268 (10th Cir. 2016) ("Faced with the conflicting opinions, the [ALJ] adopted a middle ground. . . . In this manner, the judge arrived at an assessment between the two medical opinions without fully embracing either one. We upheld this approach in *Chapo v. Astrue*, 682 F.3d 1285, 1288

11

(10th Cir. 2012).").  The ALJ's opinion clearly indicates he adequately considered the medical evidence of record, and the Court can follow his reasoning as to why his impairments considered both singly and in combination do not warrant any additional limitations.  The ALJ acknowledged the missing range of motion recordings, but noted Dr. Krishnamurthi's text notations regarding limited range of motion in those specific areas. *Richard v. Berryhill*, 2018 WL 920651, at *2 (W.D. Okla. Feb. 16, 2018) (Even "a decision of less-than-ideal clarity should be upheld [where] the agency's path may be reasonably discerned.") (internal citations and quotations omitted).

An ALJ is required to recontact a consultative examiner only if the examiner's report is "inadequate or incomplete." 20 C.F.R. § 404.1519p(b).  While that might have been a preferred option, re-contacting Dr. Krishnamurthi was not necessary where, as here, the ALJ had sufficient evidence from the entirety of his report to make a disability determination.  The ALJ is not required to recontact a physician when the evidence received "is consistent and there is sufficient evidence . . . to determine whether [a claimant] is disabled." 20 C.F.R. § 404.1520b(a).  *See* 20 C.F.R. § 404.1520b ("We [only] consider evidence to be insufficient when it does not contain all the information we need to make our determination or decision.").

Essentially, Claimant asks the Court to reweigh the evidence in his favor, which the Court cannot do.  *See Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000) ("In conducting our review, we may neither reweigh the evidence nor substitute our judgment for that of the Commissioner.") (citing *Casias*, 933 F.3d at 800).  The ALJ noted the medical records available in this case, gave reasons for his RFC determination, and ultimately found that

12

Claimant was not disabled. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (quoting *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). This was "well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ.") (citing 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946). Accordingly, the decision of the Commissioner should be affirmed.

## Conclusion

The Court finds that the decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Accordingly, the decision of the Commissioner is AFFIRMED.

**IT IS SO ORDERED** this 15th day of January, 2026.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**

13